1

Honorable John C. Coughenour

2

3

4

5

6

7

8

9
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
10
AT SEATTLE

11

12
HAROLD E. DENTON & MARY E. REGAN,
a marital community,

13
                    Plaintiffs,                          C09-1344-JCC

14
        v.                                               **ORDER**

15
BP WEST COAST PRODUCTS, LLC,
a Delaware corporation,
16

17
                    Defendant.

18

19
        This matter comes before the Court upon Defendant's motion for summary judgment. (Dkt. No.

20
16). In addition to Defendant's motion, the Court has also considered Plaintiff's response (Dkt. No. 22),

21
Defendant's reply (Dkt. No. 26), the parties' two factual stipulations (Dkt. Nos. 28 & 29), and the

22
parties' various supporting declarations and exhibits. Having reviewed the record and having concluded

23
that oral argument is unnecessary, the Court hereby DENIES the motion for the reasons explained

24
below.

25

26

I.     **BACKGROUND**

This case deals with a workplace accident. In October 2008, Plaintiff Harold Denton was an employee of Diamond B. Constructors, a company which was doing construction work on behalf of Defendant BP West Coast Products. While working atop a roof, Plaintiff slipped and fell into the building on which he was working. (Denton Decl. 4 (Dkt. No. 23)). Before the accident occurred, Plaintiff had complained that the method used to secure him and other workers to the roof was unsafe, but his complaints were ignored. (*Id.*). The injuries which Plaintiff suffered have ended his career as an iron-worker. (*Id.*). Moreover, Plaintiff has incurred almost fifty-thousand dollars in medical expenses because of the injuries, and he will require a shoulder-replacement surgery at some point in the future. (Stipulated Facts (Dkt. No. 28)).

While he was working, Plaintiff's primary supervisor was Mr. Kal Mozes, an employee of Diamond B. Constructors. (Denton Decl. 121 (Dkt. No. 16-2 at 6)). The worksite itself was also supervised by Mr. Orlando Castaneda, one of Defendant's on-site field coordinators. Mr. Castaneda described his job duties during deposition testimony:

> I am overseeing [the work]. I am managing to make sure that it is done correctly. . . . I am there to make sure that everything is safe and being installed as engineered[.] That is why we have procedures and engineering. If it is not [being installed correctly], I stop it. . . . I am kind of a babysitter for grown men and women.

(Castaneda Dep. 19 (Dkt. No. 25-2 at 20)). Mr. Castaneda also testified that he enjoyed the authority to stop workplace operations at any time for safety reasons. (*Id.* 19–20).

The worksite was also supervised on the date of the injury by another one of Defendant's employees, Mr. Scott Nolte. (Nolte Dep. 17 (Dkt. No. 25-10 at 18)). Before work could begin that day, Mr. Nolte had to give his approval. He did so after examining the worksite and considering the proposed safety procedures. (*Id.* 18). As work progressed throughout the day, Mr. Nolte checked on the worksite two other times. In deposition testimony, Mr. Nolte explained his job as "making sure that the job site was proficient—efficient, and to identify any safety hazards and the safety of the job." (*Id.* 34).

1    Finally, the worksite was also supervised by Mr. Robert King, one of Defendant's employees

2    who was assigned to its safety department. (King Dep. 11 (Dkt. No. 25-8 at 12)). Mr. King's entire

3    focus was on workplace safety. On the date of the injury, Mr. King spent approximately forty percent of

4    his time at the worksite where the injury occurred. (*Id.* 32). At one point, Mr. King became concerned

5    that employees of a contractor were using a cutting saw incorrectly, so he stopped them and instructed

6    them on how to perform the operation correctly. (*Id.* 47).

7    **II.    LEGAL STANDARD**

8    The summary-judgment procedure, which is authorized by Rule 56 of the Federal Rules of Civil

9    Procedure, provides "a method for promptly disposing of actions in which there is no genuine issue as to

10   any material fact, or in which only a question of law is involved." WRIGHT & MILLER, FEDERAL

11   PRACTICE AND PROCEDURE: CIVIL 3d § 2712. Under the plain text of Rule 56, this Court renders

12   summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any

13   affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to

14   judgment as a matter of law." FED. R. CIV. P. 56(c)(2).

15   If this Court were to apply a lower standard and render summary judgment while genuine issues

16   of material fact remained outstanding, it would intrude upon a plaintiff's Seventh Amendment right to a

17   trial by jury: "The Federal Constitution gives a right of jury trial in a contested issue in a law action.

18   This right is positive and should not be whittled away by decision of contested issues by the judge at

19   hearings *in camera* before trial." *Griffeth v. Utah Power & Light Co.*, 226 F.2d 661, 669 (9th Cir. 1955).

20   **III.    RELEVANT LAW**

21   The common law of Washington State has long distinguished between an employer's liability for

22   work-related injuries suffered by its own employees and an employer's liability for work-related injuries

23   suffered by independent contractors. *Kamla v. Space Needle Corp.*, 52 P.3d 472, 474 (Wash. 2002). The

24   general rule for employees is that an employer is directly liable for all work-related injuries suffered by

25

26   ORDER, C09-1344-JCC
     Page 3

its own employees. *See id.* The general rule for independent contractors, on the other hand, is that "one who engages an independent contractor is not liable for injuries to the employees of the independent contractor." *Hennig v. Crosby Group*, 802 P.2d 790, 791 (Wash. 1991). The scope of an employer's liability therefore depends on whether the law classifies an injured worker as an employee or as an independent contractor. *Id.*

Under the law of Washington State, an "employee" is "an agent employed by an employer to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right of control by the employer." *Kamla*, 52 P.3d at 474 (quoting Restatement (Second) of Agency § 2(2) (1958)). An "independent contractor," on the other hand, is "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." *Kamla*, 52 P.3d at 474 (quoting Restatement (Second) of Agency § 2(3) (1958)). In short, the difference between an employee and an independent contractor is "whether the employer can tell the worker how to do his or her job." *Kamla*, 52 P.3d at 474. The State Supreme Court has explained why the different rules exist: "Employers are not liable for injuries incurred by independent contractors because employers cannot control the manner in which the independent contractor works. Conversely, employers are liable for injuries incurred by employees precisely because the employer retains control over the manner in which the employee works." *Id.*

Because of this justification for the different general rules, Washington State courts have adopted an exception to the general rule that employers are not liable for injuries suffered by independent contractors: "A common-law exception to the rule of nonliability [for injuries to independent contractors] exists where the employer of an independent contractor . . . retains control over some part of the work." *Kelley v. Howard S. Wright Construction Co.*, 582 P.2d 500, 505 (Wash. 1978). Under such circumstances, "the [employer] then has a duty, within the scope of that control, to provide a safe

1   place of work." *Id.* An injured worker who was employed by an independent contractor does not need to

2   demonstrate that the employer actually manifested control over a workplace in order to recover against

3   the employer: "The test of control is not actual interference with the work of [the independent

4   contractor], but the right to exercise such control." *Id.*

5   **IV.    DISCUSSION**

6          Because Plaintiff has submitted evidence which tends to indicate that Defendant had the right to

7   exercise control over the worksite at which he was injured, summary judgment is inappropriate. This is

8   particularly true because Plaintiff has submitted evidence tending to indicate that Defendant actually

9   exercised control over the safety procedures at the worksite.

10         Plaintiff has submitted evidence which demonstrates that three of Defendant's employees

11  supervised the worksite at which he was injured. Two of Defendant's employees checked the worksite

12  throughout the day as the work progressed. Both of them—Mr. Nolte and Mr. King—enjoyed the

13  authority to stop the work from being performed if he determined that the work was being performed

14  unsafely. Mr. King did just that at one point, when he stopped workers who were using a cutting saw

15  incorrectly and instructed them on how to use the saw correctly. Plaintiff has therefore submitted

16  evidence which would allow a jury to conclude that Defendant "retained control over some portion of

17  the work." *See Kelley*, 582 P.2d at 505. Plaintiff has also submitted evidence which would allow a jury

18  to conclude that Defendant's control extended to workplace safety. If the jury were to draw both

19  conclusions, Defendant would have the duty, within the scope of workplace-safety procedures, "to

20  provide a safe place of work." *See id.*

21         Defendant's arguments for summary judgment fail because they ignore those facts that support a

22  finding of liability. Defendant argues, for example, that summary judgment is proper because the only

23  individuals working on the roof when the accident occurred were all employees of Diamond B.

24  Constructors. (Motion 3 (Dkt. No. 16)). This is true, but it ignores the actions which Defendant's

25

26  ORDER, C09-1344-JCC
    Page 5

1  employees had taken earlier in the day, before the accident occurred. Defendant nowhere mentions, for

2  example, that Mr. Nolte had checked on the worksite that very morning and approved the safety plan

3  which Diamond B. Constructors adopted. Defendant nowhere mentions that Mr. King, whose job

4  responsibilities revolve around workplace safety, spent approximately forty percent of his workday at

5  the very worksite where Plaintiff was injured. By ignoring this evidence, Defendant ignores the very

6  evidence which this Court is required to consider—the evidence which tends to indicate that Defendant

7  exercised control over the worksite. The Seventh Amendment guarantees that Plaintiff shall have the

8  right to place his evidence before a jury. Defendant, of course, shall have the same right. The motion for

9  summary judgment is denied.

10 **V.      CONCLUSION**

11         For the aforementioned reasons, the Court hereby DENIES Defendant's motion for summary

12 judgment. (Dkt. No. 16).

13

14                         SO ORDERED this 17th day of May, 2011.

15

16                                                _____

17                                                JOHN C. COUGHENOUR
                                                 United States District Judge

18

19

20

21

22

23

24

25

26 ORDER, C09-1344-JCC
   Page 6